IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Shawn Michael Robinson, | ) C/A No.: 1:14-2860-BHH-SVH |
| Plaintiff, | ) |
| vs. | ) |
| | ) REPORT AND RECOMMENDATION |
| PSO Brian Myers; Leonard Ramsey; Sabrina Wannamaker; PSO Robert Vic, | ) |
| Defendants. | ) |

Plaintiff Shawn Michael Robinson, proceeding pro se and in forma pauperis, is involuntarily committed to the Sexually Violent Predator Treatment Program ("SVPTP") at the South Carolina Department of Mental Health ("SCDMH") pursuant to S.C. Code Ann. § 44-48-10 through § 44-48-170. He brings this civil action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights by the following SCDMH employees: Anthony Myers,[1] Leonard Ramsey,[2] Sabrina Wannamaker, and Robert Vick[3] (collectively "Defendants").

This matter comes before the court on Defendants' motion for summary judgment [ECF No. 62]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [ECF No. 63]. The motion

---

[1] Defendants indicate that Anthony Myers is the correct name of this defendant.
[2] Defendants argue that Ramsey was not present for the incidents alleged in the complaint. [ECF No. 62-1 at 4–5]. Plaintiff did not dispute this in his response. Therefore, it appears that Ramsey is entitled to dismissal.
[3] Defendants indicate that Vick is the correct spelling of the defendant's last name.

having been fully briefed [ECF Nos. 66, 67], it is ripe for disposition.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this matter has been assigned to the undersigned for all pretrial proceedings. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends the district judge grant Defendants' motion for summary judgment.

I.     Factual Background

Plaintiff submitted a verified complaint,[4] which is viewed as an affidavit in this district and may, standing alone, defeat summary judgment if it contains allegations that are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). However, Defendants submitted video footage on which the court is entitled to rely. *See Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (holding that despite the parties' contradicting versions of the fact, the court was entitled to rely on the video recordings to find that no reasonable juror could have found that the officers' use of force was excessive) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

A.     Factual Allegations

Plaintiff alleges that on January 3, 2014, Public Safety Officer ("PSO") Myers physically assaulted him, without reason or provocation, by punching him in the back as Plaintiff waited in line for his nightly medication. [ECF No. 1 at 4]. Plaintiff contends

---

[4] Although Plaintiff submitted an "amended complaint" before Defendants filed their answers [ECF No. 22], there were no substantive changes and the court did not require a response from Defendants. The court refers to ECF No. 1 as the complaint for ease of reference.

2

this occurred because he filed a lawsuit (C/A No. 3:13-cv-73-CMC-SVH) naming as a defendant Dwight Green, who Plaintiff alleges is Myers' cousin. *Id*. Defendants Vick and Ramsey were also named in that suit. *Id*. at 3.

Plaintiff also alleges that on February 6, 2014, Myers and Vick performed a search of his cell and confiscated his legal documents and religious books. *Id*. at 4. Plaintiff became very upset during the search and began yelling to speak with the sergeant on duty. Myers Aff. at ¶ 11.[5] When Plaintiff began to walk away from room 119, Vick and Myers gave him verbal directives to return to the room area, which he refused. *Id*.; ECF No. 62-7 at 2. Myers, Vick, and PSO Thorpe followed Plaintiff up the stairs and, as they escorted him back down the stairs, Plaintiff alleges Myers began jerking and pinching his left arm. [ECF No. 1 at 5; Myers Aff. at ¶ 12]. Plaintiff alleges Myers was pinching him with enough force to cause his knees to buckle under him. [ECF No. 1 at 5]. He alleges PSOs Branch and Jacobs, who are not defendants in this action, slammed him face first into a chain link fence.[6] *Id*. Plaintiff claims that while five persons were subduing him, Myers pulled down Plaintiff's pants and underwear and rubbed either his hand or his nose in Plaintiff's "butt crack."[7] *Id*. Plaintiff alleges Defendants placed wrist and leg restraints on him and then pulled and carried him by the injured arm to the front of room 119. *Id*. at 6.

---

[5] Myers' affidavit may be found at ECF No. 62-3.

[6] Because Branch and Jacobs are not defendants in this action, the undersigned does not address their alleged actions.

[7] In his response, Plaintiff argues Myers "push[ed] his hard penis against my butt crack!" [ECF No. 66 at 4].

Plaintiff then alleges that he was beaten in front of room 119. *Id*. When Plaintiff refused to walk, he was carried to observation room 101 by his arms, legs, and restraints. *Id*.; ECF No. 62-7 at 2. Plaintiff alleges that a few minutes later while he was still in restraints he was beaten by Defendants and other staff in room 101. *Id*. He alleges Myers "concentrated on inflicting pain on Plaintiff's left hand and arm." *Id*. Defendants allege, and Plaintiff has not disputed, that Plaintiff remained hostile and was yelling threats at the officers. Myers Aff. at ¶ 15; Vick Aff. at ¶ 10.[8] Plaintiff was given an injection by a nurse. *Id*. Plaintiff claims that Defendants returned an hour later and again beat him while he was in four-point restraints. Plaintiff was placed on Secure Management Status for 72 hours because he repeatedly banged his head on the door of room 101. Myers Aff. at ¶ 17; Vick Aff. at ¶ 12.

Plaintiff claims he was later punished after a disciplinary hearing and was placed in solitary confinement for over 90 days without any treatment and rehabilitation privileges or access to his legal and religious materials. *Id.* Plaintiff alleges Wannamaker, his case manager, ordered that his punishment continue beyond the original 90-day sentence, threatened him with retaliation, and denied him rehabilitation treatment for which he is civilly-committed. *Id*. Plaintiff alleges Wannamaker prevented him from accessing his religious materials and called him a "Devil Worshiper" and "Pagan." *Id*.

---

[8] Vick's affidavit may be found at ECF No. 65-1.

4

B.   Video Evidence

Defendants submitted video evidence of Plaintiff awaiting his medicine on January 3, 2014. ("Video A"). The video shows that Myers lightly touches Plaintiff on the back as he maneuvers to the nurse's station.

Defendants also submitted two videos from the incident on February 6, 2014. ("Video B" and "Video C"). Video B shows Plaintiff walk away from room 119 as his room is being searched, and two officers follow him. On their return trip, as Plaintiff and the officers approach the hallway in which room 119 is located, there is an apparent struggle. The other residents appear to have been ordered to their rooms, as they all exit an adjacent room and go to their rooms. The officers place Plaintiff on the floor, but only his legs are visible in the video. Although Plaintiff's bottom is not in the camera's view during this time, at no point does it appear that his pants or underwear are pulled down. When Plaintiff returns to the camera's full view, he is in wrist restraints, but not leg restraints. As Plaintiff is being walked to room 119 with his arms behind his back, he does not appear to be in pain. When the officers completed the search of Plaintiff's room, they attempted to move him to observation room 101, but Plaintiff fell to the floor outside of room 119. The video reveals a struggle requiring at least five officers to subdue Plaintiff and place him in leg restraints. At the end of Video B, the officers are escorting Plaintiff, who is in walking in wrist and leg restraints, to room 101, and Plaintiff does not appear to be injured.

In Video C, officers are carrying Plaintiff by his arms, legs, and restraints to place him in room 101. A nurse with a shot in her hand follows the officers in room 101 and

5

leaves the room less than a minute later. Within a few minutes of the officers' exit out of the room, Plaintiff can be seen opening the flap of room 101 and sticking out his left hand and arm, which are not in restraints of any kind, before eventually beating on the flap. The officers return to the room and appear to be again subduing Plaintiff when the video ends.

## II.     Discussion

### A.     Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However,

6

"[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

   B.   Analysis

      1.   Excessive Force

         a.   January 3, 2014

Plaintiff alleges that while standing in line awaiting medication on January 3, 2014, Myers "came up from behind and punched Plaintiff in the upper spine causing significant pain." [ECF No. 1 at 4.] Defendants submitted the security footage of this incident in Video A. The video shows Plaintiff standing off to the side of the nurse's station, slightly out of the line where residents were lined up waiting to receive medication. Myers walked behind Plaintiff and lightly touched his back while maneuvering around him to reach the nurse's station. Plaintiff makes no visible reaction to the touching. The video irrefutably disputes Plaintiff's allegations. In cases involving inconsistent witness testimony, unchallenged video evidence allows a court to accept the facts portrayed in the video for purposes of ruling on a motion for summary judgment.

7

*See Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (stating that "when a video 'quite clearly contradicts the version of the story told by [the plaintiff] ... so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment'"). The undersigned recommends Defendants be granted summary judgment as to Plaintiff's claim of excessive force on January 3, 2014.

### b. February 6, 2014

Plaintiff also claims he was assaulted several different times by Defendants Myers and Vick on February 6, 2014, which Defendants have grouped into separate incidents: (1) the initial use of force to restrain and return Plaintiff to room 119; (2) the alleged sexual assault by Myers; (3) the escort to room 119; (4) the alleged beating in front of room 119; (5) the use of force to move Plaintiff to room 101; (6) the first alleged beating in cell 101; and (7) the second alleged beating in room 101 (hereinafter referred to by Incident number). [ECF No. 1 at 1–7]. After reviewing Videos B and C, the undersigned finds that Plaintiff has not demonstrated a claim for excessive force.

A plaintiff claiming excessive force under the Fourteenth Amendment,[9] must show that the force purposely or knowingly used against him was objectively unreasonable. *Kinsley v. Hendrickson*, __ U.S. __, 135 S.Ct. 2466, 2473 (2015). Further, in finding that the court is entitled to rely on video footage even if it contradicts the non-moving party's portrayal of the facts, the Supreme Court has held:

---

[9] Involuntarily committed mental patients retain a liberty interest under the Fourteenth Amendment in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions. *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982).

8

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007).

Here, Plaintiff admitted in the investigation by the Behavior Management Committee ("BMC") that he disobeyed directives not to leave the area around room 119. [ECF No. 62-7 at 2]. He also admitted that he "jerked away" from the officers, although he stated he did so because he was in pain. *Id*. He acknowledged that he had to be carried to room 101 because he refused to walk. *Id*. Finally, while he did not recall making threats to officers, he stated that he may have. *Id*. at 3.

Videos B and C refute Plaintiff's allegations of excessive force used in Incidents 1, 3, 4, and 5. Defendants' use of force was objectively reasonable, as Plaintiff continually refused to cooperate with Defendants' directives.

Regarding Incident 2, Plaintiff alleges in his verified complaint that:

While the five persons were subduing Plaintiff on the floor / Defendant Myers did pull Plaintiff's pants and underwear down and did, [as the plaintiff at first believe] rub his hand up in Plaintiff's butt crack. Plaintiff

9

>was told at a later time by other residents that it had not been his hand, but his nose!

[ECF No. 1 at 5]. A review of Video B shows that Plaintiff's pants were not pulled down. Further, Plaintiff has not provided any detail on how he knew the alleged perpetrator was Myers, considering he could not tell whether the alleged touching was a hand or a nose. In fact, in his response to summary judgment, which is not sworn,[10] Plaintiff appears to be initially unaware of who allegedly touched his rectum, but then alleges Myers pushed his erect penis against him. [ECF No. 66 at 4]. Because Video B refutes Plaintiff's allegation that his pants were pulled down, Defendants are entitled to summary judgment as to Incident 2.

While the video does not show Incidents 6 and 7, as they took place inside room 101, Plaintiff's limited allegations that Defendants "beat" him are insufficient under the facts of this particular case. Because Plaintiff has not provided any more specific allegations, the undersigned assumes that the force used in Incidents 6 and 7 is akin to the use of force in Incident 4, as Plaintiff describes each as beatings. After viewing Video B, the undersigned finds that the use of force in Incident 4 was objectively reasonable. Further, given all of the circumstances, including Plaintiff's refusal to walk to room 101, his removal of his wrist restraint, reaching out of the flap of room 101, the undersigned finds that a similar use of force in Incidents 6 and 7 was also objectively reasonable.

---

[10] Because Plaintiff's response to summary judgment is not sworn testimony, the undersigned has considered any allegations contained therein only as arguments, and not as facts.

10

Plaintiff has provided no evidence that any greater use of force was used.[11] Additionally, his medical records do not indicate greater injuries than significant bruising.

Therefore, the undersigned recommends Defendants be granted summary judgment on Plaintiff's claims of excessive force.

### 2. Solitary Confinement

Plaintiff alleges he was placed in solitary confinement in room 101 for 72 hours. Defendant states Plaintiff was placed on Administrative Secure Management Status ("SMS") for 72 hours pursuant to SVPTP policy. [ECF No. 62-6]. Administrative SMS is placement by PSOs of a resident in his room or an observation room with the door locked in either location. *Id.* at 6. The PSO will then consult with the head charge nurse and a superior officer who will review and decide on placing a resident in SMS for longer. *Id.* at 7. "When the act leading to this status was physical violence resulting in severe personal injury or there is objective evidence that the resident or other residents will be subjected to such harm, the status will be maintained until the Behavioral Management Committee meeting." *Id.*

Plaintiff was secured in room 101 by Defendants Myers and Vick and several other officers who assisted in restraining and transporting Plaintiff. Myers Aff. at ¶ 14; Vick Aff. at ¶ 9. Defendants Myers and Vick then informed the nursing staff of the incident. *Id.* Plaintiff was placed on SMS following his refusal to follow directives of

---

[11] Although Plaintiff alleges Myers "concentrated on inflicting pain on Plaintiff's left hand and arm" [ECF No. 1 at 6], the officers were compelled to use greater force to Plaintiff's left hand and arm, as he had taken off the restraints on his left wrist and was reaching his left arm out of the flap and beating on the flap.

11

officers, resisting prior restraint attempts by Myers and Vick, making threatening remarks to Myers, and later injuring himself by banging his head on the cell door. *Id*. Plaintiff was held in SMS in room 101 until February 10, 2014, when the next BMC meeting took place. *Id*. Plaintiff has not shown that his placement in room 101 until February 10, 2014, violated his constitutional rights.

Plaintiff complains that he was placed in solitary confinement in room 119 for 90 days. It is undisputed that the BMC decided to place Plaintiff on Therapeutic Room Restriction ("TRR") following the incident on February 6, 2014. None of the Defendants are members of the BMC.[12]

As Plaintiff has presented no evidence that Defendants were responsible for his placement on SMS or TRR, the undersigned recommends they be granted summary judgment on these claims.

### 3.   Confiscation of Legal and Religious Materials

Plaintiff alleges Defendants confiscated his legal and religious materials. Initially, only items deemed to be contraband were confiscated. Myers Aff. at ¶ 10. However, once a resident in placed on SMS status, all items are to be removed from the resident's room except a mattress and seclusion blanket. [ECF No. 62-6 at 11]. In addition, TRR protocol requires an assessment be made to determine if objects should be removed from the room. *Id*. at 10. The BMC determined that all of Plaintiff's items in room 119 were to be

---

[12] The undersigned also notes that the BMC held a hearing on February 10, 2014, in which they reviewed information and heard from Plaintiff. [ECF No. 62-7 at 1–4]. The BMC ordered Plaintiff to TRR until March 3, 2014, but this time was extended several times upon review by the BMC until he was removed from TRR on March 31, 2014. *Id*. at 7–20.

removed pursuant to this policy due to Plaintiff's actions and prior history. Myers Aff. at ¶ 18; Vick Aff. at ¶ 13.) This included removal of Plaintiff's legal documents and religious items. *Id.* None of Defendants are members of the BMC, and Plaintiff has presented no evidence that Defendants were responsible for the temporary confiscation of such items. Therefore, the undersigned recommends Defendants be granted summary judgment on Plaintiff's claims related to the confiscation of his legal and religious materials.

III.   Conclusion and Recommendation

Based on the foregoing, the undersigned recommends that Defendants' motion for summary judgment [ECF No. 62] be granted.

IT IS SO RECOMMENDED.

*[signature: Shiva V. Hodges]*

January 26, 2016  
Columbia, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

13

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).